# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 20, 2023

Lyle W. Cayce
Clerk

No. 22-10433

Luke Hogan, *on behalf of himself and other individuals similarly situated*,

*Plaintiff—Appellant*,

*versus*

Southern Methodist University, *and other affiliated entities and individuals*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-2899

Before Wiener, Southwick, and Duncan, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

Luke Hogan, on behalf of a putative class of students, sued Southern Methodist University ("SMU") for refusing to refund tuition and fees after the university switched to remote instruction during the COVID-19 pandemic. The district court dismissed Hogan's complaint for failure to state a claim. We REVERSE that decision in light of *King v. Baylor University*, 46 F.4th 344 (5th Cir. 2022), which was issued after the district court's ruling and which teaches that Hogan adequately pled a breach-of-contract claim. Alternatively, the district court held that Texas's Pandemic Liability

No. 22-10433

Protection Act ("PLPA") retroactively bars Hogan's claim for monetary relief and is not unconstitutionally retroactive under the Texas Constitution. That latter ruling raises a determinative-but-unsettled question of state constitutional law, which we CERTIFY to the Texas Supreme Court.

## I.

Hogan paid about $25,000 in tuition and $3,180 in mandatory fees to enroll in SMU for the Spring 2020 semester. He registered for on-campus, in-person classes. But due to the COVID-19 pandemic, SMU—like other Texas schools—suspended in-person classes in March 2020 and shifted to online instruction. As a result, students were able to continue their coursework, and Hogan himself successfully graduated at the end of the Spring 2020 semester. Even so, Hogan contends he did not receive the full benefit of his bargain. He claims that SMU's shift to remote learning breached the University's promise of "in person educational experiences, with all the appurtenant benefits offered by a first-rate university." Because SMU did not refund students any tuition or fees, Hogan sued, asserting claims for breach of contract, conversion, and unjust enrichment.

Hogan's amended complaint alleges SMU promised to provide students with on-campus services as reflected in numerous representations. He points to the University's website, marketing and orientation materials, admission application, acceptance letter, registration documents, course catalog, student handbook, and other documents. These materials, he claims, contain vivid descriptions of students on campus, benefiting from a unique community, and receiving a one-of-a-kind experience through in-person collaboration and instruction. Hogan posits these materials conveyed that "in person educational opportunities . . . were intrinsic aspects of the educational experience" for which students paid accordingly.

No. 22-10433

Additionally, Hogan's complaint cites the Student Rights and Responsibilities Agreement ("Student Agreement"), which he claims represented a binding obligation to pay tuition and fees in exchange for "educational services . . . detailed" in the documents referenced above. This Agreement relevantly provides:

> I [the student] understand that the enrollment action constitutes a binding obligation between the student and Southern Methodist University and all proceeds of this agreement will be used for educational purposes and constitute an educational loan pursuant to 11 U.S.C. § 523(a)(8).

By disbanding in-person classes, Hogan insists SMU failed to hold up its end of the bargain.

Hogan filed this putative class action in Texas state court in August 2020, on behalf of himself and all individuals who paid SMU tuition for in-person educational services during the Spring 2020 semester. He sought monetary, injunctive, and declaratory relief. SMU removed the action based on diversity jurisdiction to the Northern District of Texas.

Nearly a year later, in June 2021, the Texas Legislature enacted the PLPA, which retroactively shields the State's educational institutions (as well as entities in other fields) from monetary liability arising from their response to the pandemic. Tex. Civ. Prac. & Rem. Code § 148.004. Relevant here, the PLPA provides:

> An educational institution is not liable for damages or equitable monetary relief arising from a cancellation or modification of a course, program, or activity of the institution if the cancellation or modification arose during a pandemic emergency and was caused, in whole or in part, by the emergency.

Tex. Civ. Prac. & Rem. Code § 148.004(b).

No. 22-10433

SMU moved to dismiss under Rule 12(b)(6), contending that Hogan failed to allege an actionable contract and that his claims for unjust enrichment and conversion failed as a matter of law. Alternatively, SMU asserted that Hogan's claims were barred by the educational malpractice doctrine. And even if Hogan did state a plausible claim, SMU contended that the PLPA retroactively barred Hogan's suit. In response, Hogan primarily argued that he adequately pled an implied contract for in-person services. But he argued alternatively that, if the court determined the Student Agreement was an express contract, the agreement obligates SMU to provide on-campus educational services. Finally, while Hogan conceded the PLPA barred his claim for money damages, he argued that the law was unconstitutionally retroactive under the Texas Constitution.

The district court granted SMU's motion, dismissing Hogan's claims with prejudice. It concluded that Hogan's breach-of-contract claim failed to meet federal pleading standards by not alleging a specific contractual promise that SMU violated; that his unjust enrichment and conversion claims failed under Texas law; and, alternatively, that the PLPA was constitutional and barred Hogan's claim for monetary relief. Hogan timely appealed.

## II.

We review *de novo* the grant of a motion to dismiss under Rule 12(b)(6), accepting all well-pled facts as true and viewing them in the light most favorable to the plaintiff. *Retana v. Twitter, Inc.*, 1 F.4th 378, 380 (5th Cir. 2021). To survive such a motion, a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible when its factual matter allows us to draw a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

No. 22-10433

Though a complaint need not contain "detailed factual allegations," the federal rules "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *King*, 46 F.4th at 355 (citation omitted).

### III.

On appeal, Hogan challenges only the district court's dismissal of his breach-of-contract claim and its ruling on the PLPA's constitutionality. First, he claims the court erred by overlooking his claim that SMU breached the Student Agreement by discontinuing in-person instruction. Second, he contends the PLPA violates the Texas Constitution's retroactivity clause as applied to his claim. We consider each issue in turn.

### A.

The district court dismissed Hogan's breach-of-contract claim, finding his allegations "long on words but short on actionable detail." The court did not address Hogan's alternative argument that the parties' Student Agreement was an enforceable contract for in-person classes. In its ruling, the court noted its alignment with two other district court decisions that had dismissed similar claims: *Jones v. Administrators of Tulane Educational Fund*, No. CV 20-02505, 2021 WL 5097769 (E.D. La. Sept. 29, 2021), and *King v. Baylor University*, No. 6-20CV-00504-ADA, 2021 WL 1226562 (W.D. Tex. Mar. 31, 2021).

Since then, however, our court has reversed both of those decisions. *See King*, 46 F.4th at 344; *Jones v. Adm'rs of Tulane Educ. Fund*, 51 F.4th 101 (5th Cir. 2022). Most pertinent here is *King*. The plaintiff there sought a partial refund of her Spring 2020 tuition, claiming that Baylor's shift to online instruction breached its agreement to provide in-person educational services. *King*, 46 F.4th at 354. She pointed to Baylor's Financial Responsibility Agreement ("FRA"), which states in relevant part:

No. 22-10433

> I further understand and agree that my registration at Baylor and acceptance of the terms of this [FRA] constitutes a promissory note agreement . . . in which Baylor is providing me educational services[.]

*Id.* at 353. The parties sparred over whether the term "educational services" obligated Baylor to provide in-person instruction. *See id.* at 361–63. Declining to resolve this dispute, the district court dismissed King's complaint because the FRA did not explicitly promise in-person classes. *Id.* at 355.

We reversed. After finding the FRA to be a valid contract, we held that there is a "legitimate question" as to whether "'educational services' is ambiguous." *Id.* at 361. Accordingly, we remanded for the district court to determine whether "educational services" is susceptible to more than one reasonable interpretation. *Id.* at 362–63. And, even if the term could include online courses, we explained that the district court "must examine . . . [the] circumstances surrounding the formation of [the] contract" to determine whether King contracted with Baylor for on-campus services only. *Id.* at 363 (citation omitted); *see also id.* at 373–74 (Duncan, J. concurring).

*King* compels us to reverse the district court's ruling that Hogan failed to plead a breach-of-contract claim. Similar to *King*, the parties here offered competing interpretations as to whether the Student Agreement is an enforceable contract for on-campus instruction. Hogan argued that SMU's promise to use tuition for "educational purposes" includes applying such payments towards "in person . . . educational experiences." For its part, SMU argued that the agreement imposes no constraints on SMU's use of tuition funds, much less a promise to provide students with in-person classes. The district court did not resolve this dispute, nor did it consider whether Hogan's "capacious interpretation of 'educational [purposes]' is reasonable,

No. 22-10433

and if so, whether the term is latently ambiguous." *King*, 46 F.4th at 363. We must therefore reverse.[1]

### B.

Hogan next challenges the district court's ruling that the PLPA retroactively bars the damages he seeks. He contends this application of the PLPA violates the Texas Constitution's retroactivity clause.[2] *See* Tex. Const. art. I, § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.").

Hogan's argument raises a hard question under Texas law. Neither the Texas Supreme Court nor any other Texas court has yet decided whether the PLPA is unconstitutionally retroactive. Two federal district courts have split on how to answer the question.[3] Given this legal obscurity and the

---

[1] Alternatively, SMU argues Hogan's claim runs afoul of the educational malpractice doctrine, which bars claims premised on students' dissatisfaction with the quality of their education. *See, e.g.*, *Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992). We disagree. Even assuming Texas would apply this doctrine, we have already rejected its applicability to claims like Hogan's. As we explained in *Jones*, a straightforward breach-of-contract claim that a school failed to provide in-person classes does not implicate the educational malpractice doctrine. 51 F.4th at 110. Such a claim does not "challenge the quality of education received" but merely alleges that the school failed to fulfill an "objective" contractual promise. *Ibid.*; *see also Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 882–83 (7th Cir. 2022) (same).

[2] For the first time on appeal, Hogan argues that the PLPA also violates the respective contract clauses of the United States and Texas Constitutions. He has forfeited these arguments by failing to raise them before the district court. *See United States v. Fernandez*, 48 F.4th 405, 412 (5th Cir. 2022).

[3] *Compare Hogan v. S. Methodist Univ.*, 595 F. Supp. 3d 559, 568–72 (N.D. Tex. 2022) (finding that, because Hogan lacked settled expectations as he failed to fully adjudicate his claims before the law took effect, his "right to recover damages [was] nonexistent at worst . . . or unpredictable at best" ), *with King v. Baylor Univ.*, No. 20-CV-00504-DC, 2023 WL 2518335, at *3–11 (W.D. Tex. Mar. 11, 2023) (disagreeing with the *Hogan* district court that the retroactivity clause protects only "claims with near-certain recovery prospects").

No. 22-10433

"significant state interests" underlying the PLPA, the better course is to certify this question to the Texas Supreme Court. *Associated Mach. Tool Techs. v. Doosan Infracore Am., Inc.*, 745 F. App'x 535, 539 (5th Cir. 2018) (unpublished).

"The Texas Constitution grants the Supreme Court of Texas the power to answer questions of state law certified by a federal appellate court," provided the question is determinative and not settled by that Court's precedent. *Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 332 (5th Cir. 2018); *see also* Tex. Const. art. V, § 3-c(a); Tex. R. App. P. 58.1. On our end, we consider three factors before certifying a question:

> (1) the closeness of the question and the existence of sufficient sources of state law;
>
> (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and
>
> (3) the practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.

*Fire Prot. Serv., Inc. v. Survitec Survival Prods. Inc.*, 18 F.4th 802, 804 (5th Cir. 2021) (quoting *Silguero*, 907 F.3d at 332). These factors all counsel certifying.

First, the PLPA's constitutionality as applied to Hogan's claim is a close and unsettled issue. The Texas Constitution generally prohibits retroactive laws. Tex. Const. art. I, § 16. This prohibition "advances two fundamental objectives of [Texas's] system of government: the protection of 'reasonable, settled expectations' and protection against 'abuses of legislative power.'" *Fire Prot. Serv., Inc. v. Survitec Survival Prods., Inc.*, 649 S.W.3d 197, 201–02 (Tex. 2022) (quoting *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 139 (Tex. 2010)).

No. 22-10433

But "not all statutes that apply retroactively are constitutionally prohibited." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d. 212, 219 (Tex. 2002). Separating the wheat from the chaff requires weighing the so-called *Robinson* factors: (1) "the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings"; (2) "the nature of the prior right impaired by the statute"; and (3) "the extent of the impairment." *Tenet Hosps. Ltd. v. Rivera*, 445 S.W.3d 698, 707 (Tex. 2014) (quoting *Robinson*, 335 S.W.3d at 146). On the one hand, the *Robinson* "test acknowledges the heavy presumption against retroactive laws," defeasible only by a compelling public interest. *Ibid.* On the other, the Texas Supreme Court warns that "statutes are not to be set aside lightly," stressing that it has invalidated statutes as illicitly retroactive only a handful of times. *Robinson*, 335 S.W.3d at 146; *see also DeJoria v. Maghreb Petroleum Expl., S.A.*, 935 F.3d 381, 389 (5th Cir. 2019). Recently, the Court clarified that "a law is not retroactive in the constitutional sense unless it disrupts or impairs settled expectations." *Fire Prot. Serv.*, 649 S.W.3d at 201.

The parties agree that the PLPA retroactively bars Hogan's requested relief for monetary damages, but they understandably differ over whether that effect is constitutional. Hogan argues the PLPA is doomed by all three *Robinson* factors. He insists that the PLPA serves no compelling public interest and that the law eviscerates his well-settled expectations in an accrued breach-of-contract claim. While recognizing that the Texas Supreme Court has upheld laws retroactively winnowing plaintiffs' remedies, Hogan argues that Court has not done so when a law obliterates any right to recovery, as he asserts the PLPA does here.

SMU—joined by the Texas Attorney General as *amicus curiae*—takes the opposite view. SMU argues that the Texas Legislature explicitly found that the PLPA serves a compelling public interest in safeguarding Texas's strained educational system from a foreseeable onslaught of COVID suits.

No. 22-10433

SMU also claims that Hogan lacks settled expectations in his claim because his suit was still in its infancy when the PLPA was born. Nor, according to SMU, does the PLPA obliterate his claim because he can still pursue declaratory and injunctive relief.

We have no trouble concluding that this question is close enough to warrant certification. True, we have the *Robinson* factors. But applying them to this new problem is another matter. For example, we find it hard to answer under existing Texas law whether the PLPA impairs Hogan's well-settled expectations. SMU points to Texas cases explaining that laws "are *usually* not unconstitutionally retroactive" if they "merely affect[] remedies." *Dejoria*, 935 F.3d at 388 (emphasis added). That is because "remedial laws *generally* do not affect vested rights." *City of Austin v. Whittington*, 384 S.W.3d 766, 790 (Tex. 2012) (emphasis added). All true. But how does that general principle apply here? The PLPA strips Hogan of any damages remedy, and it is unclear (at least to us) how an injunction would give him anything meaningful. He has graduated, after all.

Second, comity counsels certification. *Robinson* itself teaches that "courts must be mindful that statutes are not to be set aside lightly" as impermissibly retroactive. 335 S.W.3d at 146. "That is even truer for us, as we are being asked to apply a state constitutional provision to prevent the application of state law to a contract which is itself a creature of state law." *Fire Prot. Serv.*, 18 F.4th at 805. Further, the parties ask us to weigh in on a Texas statute that purports to protect myriad Texas institutions from potentially dire financial fallout. We think it best to let Texas's high court say what Texas law is, rather than "*Erie*-guessing our way into uncharted waters." *Id.* at 805.

Finally, we see no practical impediments to certifying. The question, though deep, is easy enough to frame. And certifying will help declutter our

No. 22-10433

own docket, as we face a similar challenge to the PLPA in another pending appeal, *King v. Baylor University*, No. 23-50259.

IV.

Accordingly, we CERTIFY the following question to the Texas Supreme Court:

> Does the application of the Pandemic Liability Protection Act to Hogan's breach-of-contract claim violate the retroactivity clause in article I, section 16 of the Texas Constitution?

We respectfully ask the Texas Supreme Court to give us its determination of this state-law issue, which will be binding on our court. We disclaim any intention or desire that the supreme court confine its reply to the precise form or scope of the question certified.

QUESTION CERTIFIED.

**A True Copy**
**Certified Jul 20, 2023**

*Tyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**